ELECTRONICALLY FILED
Lonoke County Circuit Court
Deborah Oglesby, Circuit Clerk
2023-Jan-04 16:22:02
43CV-23-3
C23D03 : 20 Pages

### IN THE CIRCUIT COURT OF LONOKE COUNTY, ARKANSAS
### CIVIL DIVISION

**RAMONDA MACK**　　　　　　　　　　　　　　　　　　**PLAINTIFF**

vs.　　　　　　　　Case No. _____

**AMEL FIKRET HURIC;**　　　　　　　　　　　　　　　**DEFENDANTS**
**HURIC TRANSPORT LLC;**
**DURIC TRANSPORT LLC**

### COMPLAINT

COMES NOW, Ramonda Mack, by and through her undersigned attorneys, who bring this Complaint against Defendants Amel Fikret Huric, Huric Transport LLC, and Duric Transport LLC, allege and state:

### I. INTRODUCTION

1.　　This personal injury lawsuit arises out of a trucking collision that occurred on June 5, 2020, on North Hills Blvd (Interstate 40) in North Little Rock, Arkansas, causing serious and permanent injuries to Plaintiff Ramonda Mack. Amel Fikret Huric, driving on behalf of Huric Transport LLC and/or Duric Transport LLC in a commercial 18-wheeler, was traveling westbound on Interstate 40, failed to yield to the traffic ahead of him, and crashed into the side of Plaintiff Mack. Plaintiff Mack brings these claims pursuant to Arkansas state law seeking remedy for the injuries she suffered because of the collision.

### II. PARTIES

2.　　Plaintiff Mack incorporates by reference herein the preceding paragraph as though stated word-for-word.

**Ex. A**

### A. Plaintiff Ramonda Mack

3. Plaintiff Ramonda Mack is an adult, resident citizen of Lonoke County, Arkansas, and she has been a resident citizen of Arkansas at all material times referred to herein.

### B. Amel Fikret Huric

4. At the time of the collision, Defendant Amel Fikret Huric is an adult, resident citizen of Wethersfield, Hartford County, Connecticut.

5. Upon information and belief, Defendant Amel Fikret Huric has been a resident citizen of Connecticut at all material times referred to herein.

6. Defendant Amel Fikret Huric drove the tractor-trailer which struck Plaintiff Mack.

7. Either Duric Transport LLC or Huric Transport LLC or both employed Defendant Amel Fikret Huric.

### C. Duric Transport LLC

8. Duric Transport LLC ("Duric Transport") is a for-profit foreign corporation organized under the laws of Connecticut, with its principal place of business in Connecticut.

9. Duric Transport is an over-the-road interstate motor carrier whose US DOT number is 1491792.

10. At all times, Duric Transport had control over the 2013 Freightliner CASC, license plate 57369A, VIN 1FUJGLDR0DLBS1394, which is registered in Connecticut.

11. Duric Transport may be served with process in this action by delivering summons and copy of this complaint to its registered agent for service, Senad Duric, 38

Glenwood Drive, Wethersfield, CT 06109.

### D. Huric Transport LLC

12. Huric Transport LLC ("Huric Transport") is a for-profit foreign corporation organized under the laws of Connecticut, with its principal place of business in Connecticut.

13. Huric Transport is an over-the-road interstate motor carrier whose US DOT number is 3653970.

14. At all times, Huric Transport had control over the 2013 Freightliner CASC, license plate 57369A, VIN 1FUJGLDR0DLBS1394, which is registered in Connecticut.

15. Huric Transport may be served with process in this action by delivering summons and copy of this complaint to its registered agent for service, Mernes Huric, 75 Judd Road, Wethersfield, CT 06109.

16. At all times material hereto, each Defendant was acting as the agent and employee of each and every other defendant and was acting in the course and scope of that agency and employment.

17. Furthermore, the mergers, sales, and acquisitions of the various Defendants named above transferred both corporate assets and liabilities through to the successor corporations and/or partnerships. The above-named Defendants are liable for the acts and omissions, including but not limited to negligence and damages as pled below, of their subsidiaries, agents, employees, and/or servants of said Defendants and for their parent and principal. At all times relevant hereto, the above-named Defendants acted through their duly authorized subsidiaries, agents, employees, and/or servants who were acting within the scope of their employment and/or agency and in furtherance of the

Defendants' business, whether through its principal or subsidiary.

18.     Finally, upon information and belief, the acts of the Defendants were conducted in concert pursuant to an agreement amongst themselves to act in a collective manner. All defendants, therefore, are jointly and severally liable for the acts complained of herein.

### III. JURISDICTION AND VENUE

19.     Plaintiff Mack incorporates by reference herein the preceding paragraphs as though stated word-for-word.

### A. Jurisdictional Facts regarding All Defendants

20.     This Court has jurisdiction over the subject matter of this lawsuit pursuant to Art. 2 § 7 which guarantees Arkansas citizens access to Arkansas courts and juries.

21.     Jurisdiction is proper under Ark. Code Ann. § 16-13-201, which states that circuit courts shall have original jurisdiction of all actions and proceedings for the enforcement of civil rights or the redress of civil wrongs, except when exclusive jurisdiction is given to other courts. Jurisdiction is also proper under Ark. Const., Amend. 80, § 6, which states that circuit courts shall have jurisdiction in all civil cases.

22.     This Court has specific personal jurisdiction over the Defendants because the Defendants committed tortious acts in Arkansas, including, but not limited to, the personal injury that is the subject of this litigation.

23.     When assessing specific personal jurisdiction, the Court's first step "is to determine whether the connection between the forum and the episode-in-suit could justify the exercise of specific jurisdiction" because courts have the "ability to hear claims against

out-of-state defendants when the episode-in-suit occurred in the forum or the defendant purposefully availed itself of the forum,"[1] and this case far exceeds that threshold.

24. The affiliation between the Arkansas forum and the episode-in-suit warrants specific jurisdiction, which is properly exercised based on an "affiliation between the forum and the underlying controversy [such as] an occurrence that takes place in the forum"[2] (like the location of the fall in this controversy) so long as the fairness factors are met.[3]

25. When assessing specific personal jurisdiction, the Court's second step "is to consider several additional factors to assess the reasonableness of entertaining the case."[4]

26. When a corporation "purposefully avails itself of the privilege of conducting activities within the forum State … it has clear notice that it is subject to suit there [and if] the sale of a product of a manufacturer ... is not simply an isolated occurrence, but arises from the efforts of the manufacturer ... to serve **directly or indirectly**, the market for its product in other States, it is not unreasonable to subject it to suit in one of those States if its allegedly defective merchandise has there been the source of injury to its owner or to others,"[5] and this aptly describes Defendants' relationship with Arkansas.

27. Where nonresident defendants "'purposefully derive benefit' from their interstate activities … it may well be unfair to allow them to escape having to account in other States for consequences that arise proximately from such activities [because] the Due Process Clause may not readily be wielded as a territorial shield to avoid interstate

---

[1] *Daimler AG v. Bauman*, 134 S. Ct. 746, 755, 762 (2014).
[2] *Bristol-Myers Squibb Co. v. Superior Court of California, San Francisco County*, 137 S. Ct. 1773, 1780 (2017).
[3] *Gibbs v. PrimeLending*, 2011 Ark. 255, 381 S.W.3d 829 (citing *International Shoe Co. v. Washington*, 326 U.S. 310 (1945)); *John Norrell Arms, Inc. v. Higgins*, 332 Ark. 24, 962 S.W.2d 801 (1998).
[4] *Daimler AG*, 134 S. Ct. at 762.
[5] *See World–Wide Volkswagen v. Woodson*, 444 U.S. 286, 297, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980).

obligations that have been voluntarily assumed,"[6] and Defendants have purposefully obtained such benefits.

28. A nonresident defendant is subject to personal jurisdiction under the Arkansas long-arm statute to the maximum extent permitted by the Due Process of Law Clause of the Fourteenth Amendment of the United States Constitution.[7]

29. The Arkansas Supreme Court has considered three factors in determining whether due process requirements have been satisfied when personal jurisdiction has been exercised over nonresident defendants. Those three factors[8] include:

   a. A defendant must purposefully avail himself of privilege of acting in forum statue or causing a consequence in forum state;

   b. Cause of action must arise from or relate to defendant's contacts with forum state; and

   c. Acts of defendant or consequences caused by defendant must have substantial enough connection with forum state to make exercise of personal jurisdiction over defendant reasonable.

30. As outlined in this Complaint, all three factors have been satisfied for all nonresident Defendants in this action.

31. Furthermore, there is no burden on Defendants to litigate this civil action in the Arkansas forum where the crash occurred.

32. Arkansas has an interest in adjudicating this dispute which occurred in Arkansas, which involved the assessment of conduct that occurred in Arkansas, and which significantly injured people using Arkansas roads.

---

6 *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 473–74, 105 S. Ct. 2174, 2182–83 (1985).
7 A.C.A. § 16-4-101.
8 *Lawson v. Simmons Sporting Goods, Inc.*, 2019 Ark. 84; 569 S.W.3d 865 (2019).

33. Plaintiff Mack's interest in obtaining convenient and effective relief militates in favor of litigating in the Arkansas forum where the witnesses to the immediate post-crash investigation are located.

34. The exercise of specific personal jurisdiction over Defendants pursuant to the Arkansas long-arm statute is consistent with the Due Process Clause and the principles of fundamental fairness by virtue of Defendants doing business in Arkansas.

35. Defendants committed the torts at issue in this case where the causation of damages is an element of the tort and that element occurred in Arkansas.

36. Defendants engage in such continuous, systematic behavior in Arkansas, and Defendants continually conduct business in Arkansas that each separate Defendant is "at home" in Arkansas.

37. Defendants purposefully avail themselves of the privilege and opportunity to conduct business in Arkansas.

38. Because Defendants purposefully derive benefit from its interstate activities, it would be unfair to allow Defendants to escape having to account in Arkansas for consequences that arise proximately from Defendants' interstate activities.

39. Allowing the Defendants to escape jurisdiction would improperly allow Defendants to wield the Due Process Clause as a territorial shield to avoid interstate obligations that Defendants have voluntarily assumed.

### B. Venue

40. Venue is proper under Ark. Code Ann. § 16-60-101(a), which states that all actions for damages for personal injury shall be brought in (1) the county in which a substantial part of the event or omissions giving rise to the cause of action accrued; (2)

the county where an individual defendant resided at the time of the event or omission giving rise to the cause of action; or (3) in the county in which the plaintiff resided at the time of the event or omissions giving rise to the cause of action. This case meets the last scenario enumerated in this statute because Plaintiff Mack resided in Lonoke County at the time of the event or omission giving rise to the cause of action.

41. Venue is proper to the Defendants under Ark. Code Ann. §16-60-101(e).

### IV. FACTUAL ALLEGATIONS

42. Plaintiff Mack incorporates by reference herein the preceding paragraphs as though stated word-for-word.

43. On June 5, 2020, Plaintiff Mack traveled westbound on I-40 in North Little Rock, Arkansas, in her 2020 Toyota Corolla.

44. Defendant Huric, driving as an employee on behalf of either Duric Transport or Huric Transport or both, also drove the commercial 18-wheeler in the same direction as Plaintiff Mack.

45. Without keeping a proper lookout, Defendant Huric merged from second lane to third lane where he struck Plaintiff Mack.

46. The crash occurred on or about 7:18 am on June 5, 2020.

47. At all times, Plaintiff Mack operated her vehicle in a safe and prudent manner.

48. As a result of the wreck, Plaintiff Mack sustained significant and permanent injuries.

49. Plaintiff Mack suffered injuries to her neck, back, chest, ankles, and wrists. This led to bulging disc in her neck and caused pain in her neck and back to radiate down her legs.

## V. CAUSES OF ACTION

### A. FIRST CAUSE OF ACTION – DIRECT AND VICARIOUS LIABILITY OF DURIC TRANSPORT AND HURIC TRANSPORT

50. Plaintiff Mack incorporates by reference herein the preceding paragraphs as though stated word-for-word.

51. At the time of the crash, either Duric Transport or Huric Transport or both employed Defendant Huric and provided policies and supervision to Defendant Huric.

52. Either Duric Transport or Huric Transport or both hired Defendant Huric and at all times of his employment retained control and authority over him, including the power to allow him to drive vehicles owned by Duric Transport and make deliveries for Duric Transport.

53. At the time of the accident, either Duric Transport or Huric Transport or both paid Defendant Huric, and Defendant Huric's actions furthered the business interest of either Duric Transport or Huric Transport or both.

54. Defendant Huric, and his employer, either Duric Transport or Huric Transport or both, had a direct, affirmative non-delegable duty, as a commercially licensed trucking operation, to safely and jointly operate their semi-tractor trailer on interstate highways in a reasonably prudent manner and with the highest degree of care.

55. At all relevant times, Defendant Huric was acting as an agent/employee/servant within the scope and course of his employment with either Duric Transport or Huric Transport or both, subject to its direction and control while furthering

their business interests and financial enterprises on interstate highways in the State of Arkansas.

56. Duric Transport or Huric Transport are affirmatively negligent, and directly and vicariously liable, under the doctrine of *respondent superior* and imputed conduct, for the conduct of its agent and employee within the course and scope of his employment.

57. Defendant Huric is an agent and employee of either Duric Transport or Huric Transport or both who tasked Defendant Huric to drive a tractor-trailer through the state of Arkansas on Interstate 40.

58. Either Duric Transport or Huric Transport or both entrusted, permitted, and allowed Defendant Huric to operate Duric Transport's commercial motor vehicle and to maneuver on a public highway in the negligent and reckless manner in which Defendant Huric was driving at the time that Duric Transport's commercial motor vehicle created the unsafe, dangerous condition and instrumentality on Interstate 40.

59. The acts and omissions of Defendant Huric are directly imputed to his employer and principal, Duric Transport and Huric Transport. Defendant Huric's negligent and careless acts and omissions occurred while he was within the scope and course of his employment and in furtherance of the business interests of Duric Transport and Huric Transport on the public roads and interstate highways in the State of Arkansas.

60. Both Duric Transport and Huric Transport are directly and affirmatively responsible for the actions of their employees, agents and servants in its trucking enterprise operating its vehicles on interstate highways.

61. Duric Transport and Huric Transport failed to have standards, systems, policies and/or procedures in place to prevent their drivers from operating its truck, tractor,

semitrailer, and commercial motor vehicle equipment and combination in a negligent, careless and/or reckless manner on interstate highways.

62. Duric Transport and Huric Transport through their direct corporate actions and inactions, adopted an unreasonable and imprudent policy, procedure practice and standard, in which they allowed and encouraged for financial benefits rather than discouraged, Defendant Huric, to drive and operate the commercial motor vehicle, in the negligent, careless and reckless manner in which Defendant Huric was operating, maneuvering at the time of the collision on Interstate 40.

63. The agent, employee, and servant of either Duric Transport or Huric Transport or both, in the course and scope of employment, as a commercially licensed driver, must be able to maintain, control and safely operate the semi-truck, trailer, semitrailer, on interstate highway systems, including public highways in the State of Arkansas.

64. Under the FMCSR, the truck driver and motor carriers under U.S. DOT must have knowledge of the commercial motor vehicle, the equipment and use of the equipment. 49 C.F.R. §§ 383.11, 392.2, 392.7, 393.95, 395.2, 395.3. This knowledge includes pre-trip inspections, operations and emergency equipment inspection, operation, and use.

65. This safe and prudent commercial motor vehicle operation under FMCSR, state law, and industry standards, customs, and practices, includes keeping a proper surveillance and lookout for other motor vehicles before braking, accelerating, changing speed and lane direction, crossing lanes of a highway, avoidance of willfully and wantonly operating a large semi-tractor trailer creating a dangerous instrumentality on public

highway and endangering the safety of others on the roadway.

66. Defendant Huric must be properly trained to inspect his commercial motor vehicle, including emergency operation and use, proper sight and view of public traffic and safely prudent operations. Defendant Huric must maintain a reasonable and prudent speed and lane control under the circumstances.

67. Defendant Huric must also not drive or operate a motor vehicle and motor carrier while distracted, not observant of other drivers on the highway and his vision and ability to operate the motor vehicle are impaired as to make it unsafe for others traveling on the interstate.

68. Duric Transport and Huric Transport failed to train, supervise, monitor, and control its employees, including Defendant Huric, regarding the rules, regulations, procedures and policies applicable to commercial drivers operating tractor-trailer trucks on the roads of the United States.

69. Duric Transport and Huric Transport failed to have policies and/or procedures in place to prevent its drivers, including Defendant Huric, from operating Duric Transport's semi-tractor-trailer and motor vehicle equipment in a negligent and/or reckless manner.

70. Duric Transport and Huric Transport failed to have appropriate industry standards, customs and practice and polies and/or procedures in place to prevent their semi-tractor drivers, including Defendant Huric, from operating the semitrailer and tractor equipment in a negligent and/or reckless manner presenting appreciable risk of harm to public travelers on public highways in the State of Arkansas.

71. Duric Transport and Huric Transport were themselves willful and wanton in

its conduct, as it had notice or could have foreseen that Defendant Huric would act willfully, wantonly, or with conscience indifference.

72. It was foreseeable that the failure of Duric Transport and Huric Transport to have a reasonably safe and prudent transportation system and to fail to control and operate their semi-trailer in a reasonably prudent and safe manner on an interstate highway in the State of Arkansas, would present and cause an appreciable risk of serious harm or danger to other public users and travelers on the interstate highway system.

73. As a direct and proximate result of the collision and the wrongful and negligent acts and/or omissions of Defendants, Plaintiff Mack suffered, *inter alia,* severe and permanent injuries, past, present, and future lost wages and loss of earning capacity, conscious physical and emotional pain, suffering and mental anguish, past, present, and future medical costs, including care-taking expenses, and other damages in excess of the amount required for federal diversity jurisdiction.

**B. SECOND CAUSE OF ACTION – DIRECT NEGLIGENCE OF AMEL FIKRET HURIC**

74. Plaintiff Mack incorporates by reference herein the preceding paragraphs as though stated word-for-word.

75. Defendant Huric owed a duty to keep a proper lookout for the safety of Plaintiff Mack and others, both before and at the time of the collision.

76. At the time of the collision, Defendant Huric violated this duty of keeping a proper look out, which needlessly caused serious and permanent personal injury and property damage to Plaintiff Mack.

77. Defendant Huric owed a duty to keep the commercial vehicle under proper control for the safety of Plaintiff Mack and others, both before and at the time of the

collision.

78. At the time of the collision, Defendant Huric violated this duty of keeping the commercial vehicle under proper control, which needlessly caused serious and permanent personal injury and property damage to Plaintiff Mack.

79. Defendant Huric owed a duty to drive the commercial vehicle in such a manner as to not indicate a wanton disregard for the safety of Plaintiff Mack and others, both before and at the time of the collision.

80. At the time of the collision, Defendant Huric violated this duty of driving the commercial vehicle in such a manner as to not indicate a wanton disregard, which needlessly caused serious and permanent personal injury and property damage to Plaintiff Mack.

81. Defendant Huric owed a duty to use ordinary care for the safety of Plaintiff Mack and others, both before and at the time of the collision.

82. At the time of the collision, Defendant Huric violated this duty of using ordinary care, which needlessly caused serious and permanent personal injury and property damage to Plaintiff Mack.

83. Defendant Huric owed a duty to stay alert and to drive attentively for the safety of Plaintiff Mack and others, both before and at the time of the collision.

84. At the time of the collision, Defendant Huric violated this duty of staying alert and driving attentively, which needlessly caused serious and permanent personal injury and property damage to Plaintiff Mack.

85. Defendant Huric owed a duty to comply with Federal and State law, accepted traffic safety engineering principles, and local laws governing safety and health

including, but not limited to Federal Highway Administration Regulations, MUTCD, OSHA, and Arkansas State Highway and Transportation Department Standards for the safety of Plaintiff Mack and others, both before and at the time of the collision.

86. At the time of the collision, Defendant Huric violated this duty of complying with comply with Federal and State law, accepted traffic safety engineering principles, and local laws governing safety and health including, but not limited to Federal Highway Administration Regulations, MUTCD, OSHA, and Arkansas State Highway and Transportation Department Standards, which needlessly caused serious and permanent personal injury and property damage to Plaintiff Mack.

87. The above-referenced Arkansas statutes and the Federal Motor Carrier Safety Regulations were enacted and intended to protect motorists, passengers, and pedestrians from the dangerous operation of vehicles, including semi-tractor trailers operating upon public roadways and interstate highways. At the time of the statutory violations alleged above, Plaintiff Mack was a motorist on an interstate highway, and thus belonged to the class of persons that these Arkansas statutes and the Federal Motor Carrier Safety Regulations were enacted and intended to protect.

88. It was foreseeable that the failure of Defendants to have a reasonably safe and prudent transportation system and to fail to control and operate their semi-trailer in a reasonably prudent and safe manner on an interstate highway in the State of Arkansas, would present and cause an appreciable risk of serious harm or danger to other public users and travelers on the interstate highway system.

89. As a direct and proximate result of the collision and the wrongful and negligent acts and/or omissions of Defendants, Plaintiff Mack suffered, *inter alia,* severe

and permanent injuries, past, present, and future lost wages and loss of earning capacity, conscious physical and emotional pain, suffering and mental anguish, past, present, and future medical costs, including care-taking expenses, and other damages in excess of the amount required for federal diversity jurisdiction.

### E. THIRD CAUSE OF ACTION – GROSS NEGLIGENCE

90. Plaintiff Mack incorporates by reference herein the preceding paragraphs as though stated word-for-word.

91. The wrong done by the Defendants was aggravated by the kind of gross negligence, malice, and callous disregard for which the law allows the imposition of exemplary and punitive damages.

92. The conduct of the Defendants, when viewed objectively from the Defendants' standpoint at the time of the conduct, involved an extreme degree of risk, considering the probability and magnitude of the potential harm to others, and the Defendants were in fact subjectively aware of the risk involved, but nevertheless proceeded with conscious indifference to the rights, safety, or welfare to others.

93. The Defendants' acts of omission and commission, which collectively and severally constituted gross negligence, were a proximate cause of Plaintiff Mack's injuries and damages.

### VI. CAUSATION OF PLAINTIFF MACK'S INJURIES AND DAMAGES

94. Plaintiff Mack incorporates by reference herein the preceding paragraphs as though stated word-for-word.

95. The injuries and damages sustained by Plaintiff Mack, more particularly described below, were produced in a natural and continuous sequence from Defendants'

violations of one or more of the above-described independent duties to use ordinary care for the safety of Plaintiff Mack.

96. The injuries and damages sustained by Plaintiff Mack were a probable consequence from the Defendants' violations of one or more of the above-described independent duties to use ordinary care for the safety of Plaintiff Mack.

97. Defendants should have foreseen and anticipated that a violation of one or more of the above-described independent duties to use ordinary care and follow the safety rules would constitute an appreciable risk of harm to others, including Plaintiff Mack.

98. If Defendants had not violated one or more of the above-described independent duties to use ordinary care and to follow the safety rules for the safety of Plaintiff Mack, then Plaintiff Mack's injuries and damages would not have occurred.

## VII. COMPENSATORY DAMAGES SUSTAINED BY PLAINTIFF MACK

99. Plaintiff Mack incorporates by reference herein the preceding paragraphs as though stated word-for-word.

100. The injuries and damages sustained by Plaintiff Mack as a result of Defendants' violations of one or more of the above duties, include, but are not limited to, the following:

   i. Serious and permanent bodily injuries to Plaintiff Mack's body, which is a life-changing events causing her to lose the ability to enjoy a normal quality of life;

   ii. Medical expenses incurred in the past and reasonably expected to be incurred in the future, and transportation expenses to obtain such medical treatment;

   iii. Physical pain and suffering experienced in the past and

        reasonably expected to be experienced in the future;

  iv.    Loss of income in the past and reasonably expected to be experienced in the future;

  v.    Loss of earning capacity due to permanent physical impairment from the injuries caused by the collision;

  vi.    Mental anguish experienced in the past and reasonably expected to be experienced in the future, which includes, but is not limited to, Plaintiff Mack's loss of quality of life due to permanent injuries causing chronic pain that limit their activities; and

  vii.    The reasonable expense of any necessary help in Plaintiff Mack's home in the past, and reasonably certain to be required in the future, because of her injuries.

## VIII. AMOUNT OF DAMAGES

101. Plaintiff Mack incorporates by reference herein the preceding paragraphs as though stated word-for-word.

102. Plaintiff Mack's injuries and damages are in excess of the minimum amount required for federal court jurisdiction in diversity of citizenship cases, for which Plaintiff Mack should be awarded a judgment as against Defendants in an amount to fully and fairly compensate them for each and every element of damages that has been suffered.

## IX. PUNITIVE DAMAGES

103. Plaintiff Mack incorporates by reference herein the preceding paragraphs as though stated word-for-word.

104. Plaintiff Mack is entitled to recover punitive damages in accordance with Arkansas law, based upon the Defendants' complete indifference to and conscious disregard for the safety of Plaintiff Mack and others, causing or contributing to catastrophic and permanent injuries. Defendants' wanton and reckless acts and

omissions occurred under circumstances where their conduct, in total disregard of the consequences, would naturally and probably result in injury or damages to Plaintiff Mack. Defendants knew or should have known, in light of the surrounding circumstances, that their conduct would naturally and probably result in catastrophic and serious injury, and they continued this conduct with malice and wanton and reckless disregard for the consequences of its actions for which punitive damages should be awarded.

105. In addition to actual, special, consequential, and compensatory damages, Plaintiff Mack demands a judgment against Defendants for punitive damages in an amount necessary and sufficient to deter Defendants from the above-described conduct and to punish Defendants for their willful, wanton, gross, flagrant, reckless, outrageous, and egregious conduct.

106. Specifically, Duric Transport and Huric Transport were willful and wanton in its conduct, including its failure to train, supervise, and control Defendant Huric and its tractor trailer, as Duric Transport and Huric Transport had notice or could have foreseen that Defendant Huric would act willfully, wantonly, or with conscience indifference.

## X. DEMAND FOR JURY TRIAL

107. Plaintiff Mack incorporates by reference herein the preceding paragraphs as though stated word-for-word.

108. Plaintiff Mack demands a jury trial for all issues of fact presented by this action.

## XI. RESERVATION OF ADDITIONAL CLAIMS

109. Plaintiff Mack incorporates by reference herein the preceding paragraphs as though stated word-for-word.

110. Plaintiff Mack reserves the right to plead further upon completion of discovery to state additional claims and to name additional parties to this action.

WHEREFORE, Plaintiff Mack prays that after a jury trial of this action that she be awarded the following:

A. A judgment against Defendants in such an amount that will fully and fairly compensate Plaintiff Mack for all of the above-described damages and in an amount in excess of that required for federal court jurisdiction in diversity of citizenship cases;

B. A judgment and verdict against Defendants awarding exemplar or punitive damages as permitted by law;

C. All costs expended herein including attorneys' fees and any expert costs and fees as permitted by law;

D. A pre- and post-judgment interest award against Defendants to compensate for loss of money and to the extent of and for the reasons permitted by law; and

E. All other proper relief to which Plaintiff Mack may be entitled in the premises.

Respectfully Submitted,

Joseph Gates, Bar No. 2010239
**Gates Law Firm, PLLC**
2725 Cantrell Road, Suite 105
Little Rock, AR 72202
Phone: (501) 779-8091
Fax: (479) 269-9788
Email: Gates@GatesLawPLLC.com

By: _____
Joseph Gates